# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| DONNA HOGLE, *as Administrator of the Estate of Patrick A. Regan, Deceased,*<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN BALDWIN, *Illinois Department of Corrections Director,* MELVIN HINTON, WEXFORD HEALTH SOURCES, INC., GUY PIERCE, *Pontiac Correctional Center Warden,* LINDA DUCKWORTH, STEPHEN LANTERMAN, KELLY HAAG, REZWAN KAHN, UNKNOWN EMPLOYEES OF ILLINOIS DEPARTMENT OF CORRECTIONS, UNKNOWN MEDICAL DIRECTOR OF PONTIAC CORRECTIONAL CENTER<br><br>    Respondents. | Case No. 1:17-cv-01059-JBM-JEH |

## ORDER & OPINION

The matter is before the Court on Defendants' Motions to Dismiss. (Docs. 7, 13). For the reasons explained below, Defendants John Baldwin, Melvin Hinton, and Guy Pierce's Partial Motion to Dismiss (Doc. 7) is granted. Defendants Kelly Haag, Linda Duckworth, Stephen Lanterman, Dr. Rezwan Kahn, and Wexford Health Sources, Inc.'s Motion to Dismiss (Doc. 13) is granted. Plaintiff has twenty-one days to file a second amended complaint to cure the deficiencies as noted.

1

BACKGROUND[1]

While an inmate in the custody of Pontiac Correctional Center ("Pontiac") located in Pontiac, Illinois, Patrick A. Regan hanged himself in his cell on February 10, 2016. (Doc. 2, ¶ 37). Regan had previously been diagnosed with Post Traumatic Stress Disorder ("PTSD"), Bipolar Disorder, General Anxiety Disorder, Depression, and Borderline Personality Disorder. *Id.* at ¶2. Regan had been transferred between numerous facilities, including DeKalb County Jail ("DeKalb"), Vienna Correctional Center ("Vienna"), and Pinckneyville Correctional Center ("Pinckneyville"), before arriving at Pontiac on July 1, 2015. *Id.* at ¶¶31-35. While housed at Vienna, Pinckneyville, and Pontiac, Regan was seeing psychiatrists, attending therapy, and he was prescribed various psychotropic medications. *Id.* at ¶36. Regan had previously attempted suicide by hanging at DeKalb. *Id.* at ¶31.

While at Pontiac, Regan insisted he remain in a cell alone because he feared for himself in that he might harm himself and his cellmates in response to his PTSD triggers. *Id.* at ¶¶5-6. Prior to the fateful day of February 10, 2016, Regan had not been seen by medical staff in eleven days. *Id.* at ¶37. Between January 23, 2016, and January 30, 2016, Regan met with four of the defendants, all of whom are employed by Wexford Health Sources, Inc. ("Wexford"): clinical social worker Kelly Haag, nurse Linda Duckworth, clinical social worker Stephen Lanterman, and Dr. Rezwan Kahn (collectively referred to as the "Medical Defendants"). *Id.* at ¶40. On January 23,

---

[1] For purposes of the instant motions, the Court accepts the following facts alleged by Plaintiff as true. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

2016, Haag recommended that Regan remain on a ten-minute watch due to potential for self-harm. *Id.* at ¶41. The following day, Duckworth recommended that Regan be placed on fifteen-minute watches. *Id.* at ¶42. On January 25, 2016, Lanterman recommended that Regan be taken off crisis watch, with seven-day mental health professional and medical doctor follow-ups. *Id.* at ¶43. On January 30, 2016, Regan was seen by Dr. Kahn, prescribed psychotropic medications, and no follow-up sessions were scheduled before Regan took his life on February 10th. *Id.* at ¶39.

On February 6, 2017, Plaintiff filed an eleven-count complaint against the Defendants.[2] Counts I-IV allege violations of the Fourteenth Amendment under 42 U.S.C. § 1983 against Illinois Department of Corrections (the "IDOC") Director, John Baldwin, Chief of Mental Health Services for the IDOC, Melvin Hinton, Unknown Medical Director of Pontiac, Wexford, the Medical Defendants, Warden of Pontiac, Guy Pierce, and Other Unknown Employees of the IDOC for failing to (1) supervise Regan, (2) provide him with needed medical care, and (3) assess and treat Regan's mental health issues in a timely manner. (Doc. 2 at 13-23). Counts V-VII allege violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§12131-12134, and the Rehabilitation Act, against Baldwin, Hinton, Unknown Medical Director of Pontiac, and Wexford for failing and refusing to accommodate Regan's medical and mental health disabilities. *Id.* at 23-30. Count VIII alleges that

[2] On February 7, 2017, the Court entered an order striking Plaintiff's original complaint because it contained the names of individuals known to be a minor and original signatures. In compliance with Local Rule 5.11 and Federal Rule of Civil Procedure 5.2, Plaintiff filed a redacted Amended Complaint on February 8, 2017. (Doc. 2).

Wexford is liable for damages under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), for failing to establish and/or implement policies, practices, and procedures to ensure that Pontiac inmates received appropriate medical care. *Id.* at 31-32. Counts IX-XI allege wrongful death claims under Illinois law against Baldwin, Hinton, Unknown Medical Director of Pontiac, and Wexford. *Id.* at 32-37.

On March 9, 2017, Defendants Baldwin, Hinton, and Pierce (collectively the "Correctional Defendants") filed a Partial Motion to Dismiss. (Doc. 7). Their arguments are threefold: (1) Pierce and Baldwin are entitled to Eleventh Amendment sovereign immunity from damages under §1983 in their official capacities; (2) Plaintiff is not entitled to relief under the ADA or the Rehabilitation Act from Hinton in his individual capacity; and (3) this Court lacks jurisdiction over Plaintiff's wrongful death claim against Baldwin because the Illinois Court of Claims possesses exclusive jurisdiction over that claim. (Doc. 8).

On April 3, 2017, the Medical Defendants and Wexford filed a Motion to Dismiss, (Doc. 13), arguing that Plaintiff fails to state a claim under the Fourteenth Amendment against all Defendants, and that she fails to state a claim for wrongful death or under the ADA and *Monell* against Wexford. (Doc. 14). The Medical Defendants and Wexford also argue that Plaintiff is improperly attempting to hold Wexford vicariously liable for the conduct of its employees. *Id.* at 5.

Plaintiff has responded to both motions and they are ready for decision. (Docs. 18, 20).

In ruling on a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), "the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Furthermore, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient detail to give notice of the claim, and the allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). The plausibility standard requires enough facts to "present a story that holds together," but does not require a determination of probability. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Though detailed factual allegations are not needed, a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## DISCUSSION

## I. PLAINTIFF'S § 1983 CLAIMS PURSUANT TO THE FOURTEENTH AMENDMENT AGAINST VARIOUS DEFENDANTS FAIL

Before the Court are two separate motions: a partial motion to dismiss filed by the Correctional Defendants and a motion to dismiss filed by the Medical Defendants

and Wexford. While the Court intends to analyze each motion separately below, there is one issue that is applicable to both the Correctional Defendants and Wexford that the Court will address first.

Counts I-IV of Plaintiff's amended complaint bring causes of action under 42 U.S.C. § 1983 pursuant to the Fourteenth Amendment against Baldwin, Hinton, Unknown Medical Director of Pontiac, Wexford, Pierce, and Other Unknown Employees of the IDOC. Count VIII also seeks damages under *Monell* against Wexford for alleged Fourteenth Amendment violations. A pre-trial detainee's constitutional right to adequate medical care derives from the Fourteenth Amendment, while the same right for a convicted prisoner derives from the Eighth Amendment. *See Smith v. Dart*, 803 F.3d 304, 310 (7th Cir. 2015). At all relevant times, Regan was a convicted prisoner serving a three-year sentence with the IDOC. (Doc. 2, ¶ 32). Therefore, Regan's constitutional right to receive adequate medical treatment while incarcerated derives from the Eighth Amendment.

Plaintiff concedes that she mistakenly pleaded her § 1983 claims under the Fourteenth Amendment rather than the Eighth Amendment. Because these deficiencies can be cured, Plaintiff is granted twenty-one days to file a second amended complaint curing her deficiencies.

## II. THE CORRECTIONAL DEFENDANTS' PARTIAL MOTION TO DISMISS

The Correctional Defendants argue that (1) Pierce and Baldwin are entitled to Eleventh Amendment sovereign immunity from damages under § 1983 in their official capacities; (2) Plaintiff is not entitled to relief under the ADA or the

Rehabilitation Act from Hinton in his individual capacity; and (3) this Court lacks jurisdiction over Plaintiff's wrongful death claim against Baldwin because the Illinois Court of Claims possesses exclusive jurisdiction over that claim. (Doc. 8). The Court will address each argument in turn.

## A. Baldwin and Pierce Are Entitled to Eleventh Amendment Immunity in Their Official Capacities

Count I of the amended complaint sues Baldwin in his official capacity under § 1983, and Count IV sues Pierce in his individual and official capacities under § 1983.[3] "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State [or its agencies] for alleged deprivations of civil liberties." *Will v. Mich. Dep't of State Police*, 109 S.Ct. 2304, 2309 (1989). "The Eleventh Amendment bars such suits unless the State [or its agency] has waived its immunity," and in passing § 1983, Congress "had no intention to disturb the States' Eleventh Amendment immunity . . . ." *Id.* at 2309-10. Neither the IDOC nor Illinois has consented to suits for damages under § 1983. *Ford v. Lane*, 714 F.Supp. 310, 313 (N.D. Ill. 1989) (citing *Duckworth v. Franzen*, 780 F.2d 690, 695 (7th Cir. 1987), *cert. denied*, 476 U.S. 321 (1986)).

"It is well-established that suits against government officials in their official capacity are suits against the governmental entity of which the officer is an agent."

---

[3] In Plaintiff's amended complaint, she explicitly sues Baldwin in his official capacity, (Doc. 2 at ¶ 19), and Pierce in his individual capacity. *Id.* at ¶ 24. However, in her brief, Plaintiff indicates that she is also suing Pierce in his official capacity. (Doc 18 at 3).

*Ames v. Randle*, 933 F.Supp.2d 1028, 1038 (N.D. Ill. 2013) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). Likewise, it is well-settled that neither a State nor its officials acting in their official capacities are "persons" subject to an action for damages under § 1983. *Will*, 109 S.Ct. at 2312. While the Eleventh Amendment bars actions for damages in federal court against a state, state agencies, or state officials acting in their official capacities, it does not bar suits against state officials if they are sued in their official capacities for "prospective equitable relief" to remedy "ongoing violations of federal law," or in their individual capacities for damages under § 1983. *Mutter v. Rodriguez*, ---F. App'x--- 2017 WL 3588306, *2 (7th Cir. Aug. 21, 2017). As such, to the extent Plaintiff seeks damages from Baldwin and Pierce in their official capacity for money damages, § 1983 does not permit such an action and her action is therefore barred. *See Ford v. Page*, 169 F.Supp.2d 831, 841 (N.D. Ill. 2001) (noting that, to the extent Plaintiff alleged § 1983 claims for damages against Pontiac Correctional officials in their official capacities, those claims were barred); *Ames*, 933 F.Supp.2d at 1038 (dismissing § 1983 claims for damages against the IDOC Director and other IDOC employees in their official capacities).

Plaintiff requests leave to file an amended pleading to correct the deficiencies in her complaint. But because Regan is deceased and necessarily no longer in IDOC or Pontiac custody, prospective injunctive relief is not available against either Pierce or Baldwin in their official capacities. *See Henderson v. Sheahan*, 196 F.3d 839, 849 n. 3 (7th Cir. 2000); *Diaz v. Hart*, No. 08-5621, 2010 WL 849654, *9 (N.D. Ill. Mar. 8,

2010). Therefore, Plaintiff's request to amend is denied and her § 1983 official capacity claims against Pierce and Baldwin are dismissed.[4]

### B. Hinton May Not be Sued Under the ADA or the Rehabilitation Act

Count VI of the amended complaint sues Hinton, Chief of Mental Health Services for the IDOC, under Title II of the ADA and the Rehabilitation Act. As a general rule, there is no personal liability under Title II of the ADA or the Rehabilitation Act. *Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015). The only proper defendant in a claim under the ADA and/or Rehabilitation Act is the state agency (or a state official acting in his or her official capacity); employees of the DOC are not amendable to suit under either Act. *See Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012); *Legore v. Allsup*, No. 16-1137, 2017 WL 131578, *4 (S.D. Ill. Jan. 13, 2017) (citing 29 U.S.C. § 794(b); 42 U.S.C. § 12131)).

Plaintiff requests leave to file an amended pleading to correct the deficiencies in her complaint. However, Count V already alleges ADA and Rehabilitation Act claims against the proper defendant, Baldwin, in his official capacity as director of the IDOC. Therefore, Plaintiff's request to amend is denied and her ADA and Rehabilitation Act claims against Hinton are dismissed. *See Strominger v. Brock*, No. 10-0158, 2014 WL 268444, *6 (S.D. Ind. Jan. 23, 2014) (dismissing ADA and

---

[4] Of course, if Plaintiff fails to amend her complaint to assert Eighth Amendment claims instead of Fourteenth Amendment claims, all of her § 1983 claims will be dismissed in their entirety.

Rehabilitation Act claims against individual defendants as duplicative since the DOC was also named as a defendant).

## C. The Court Lacks Jurisdiction Over Plaintiff's Wrongful Death Claim Against Baldwin

Count IX of the amended complaint asserts a wrongful death claim against Baldwin. The Correctional Defendants argue that this Court lacks jurisdiction over this claim because the Illinois Court of Claims possesses exclusive jurisdiction over all tort claims brought against the State or its agencies.

Under the Illinois State Lawsuit Immunity Act ("ISLIA"), 745 ILSC 5/0.01 *et seq.*, the State of Illinois "shall not be made a defendant or party in any court" except as provided in either the Illinois Public Labor Relations Act, 5 ILCS 315/1 *et seq.*, or the Illinois Court of Claims Act, 705 ILCS 505.1 *et seq.* 745 ILCS 5/1. The Court of Claims Act vests exclusive jurisdiction in the Court of Claims in all actions "against the State founded upon any law of the State of Illinois." 705 ILCS 505/8(a).[5] "Under Illinois law, a claim against individual officers will be considered a claim against the state, even when . . . the officials are sued in their individual capacities, if 'judgment for the plaintiff could operate to control the actions of the State or subject it to liability.'" *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001) (citing *Currie v. Lao*, 148 Ill.2d 151, 158 (Ill. 1992)). "If the state law claim is deemed to be against the state, then it must be dismissed." *Id.*

---

[5] State sovereign immunity rules apply to state-law causes of action brought in federal court against state officials. *See Omosegbon v. Wells*, 335 F.3d 668, 673 (7th Cir. 2003).

"An agent's conduct will be attributed to the state for purposes of sovereign immunity if: '(1) [there are] no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the facts of State employment; and (3) . . . the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.'" *Id.* (citing *Healy v. Vaupel*, 133 Ill.2d 295, 308 (Ill. 1990)) (internal citations omitted). "Sovereign immunity affords no protection, however, when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority." *Id.* (citing *Healy*, 133 Ill.2d at 308).

Plaintiff argues that sovereign immunity does not apply here because she alleges that Baldwin enforced unconstitutional policies that resulted in inadequate mental health treatment for patients. However, in support of her wrongful death claim, Plaintiff alleges in her amended complaint that Regan's death was proximately caused by the neglect, default, and/or willful and wanton conduct of Baldwin. (Doc. 2, ¶ 140). In *Richman*, 270 F.3d at 441, the Seventh Circuit held that a wrongful death claim was effectively against the state where it was *not* dependent on the alleged constitutional violation of the defendant, but instead on a theory of willful and wanton negligence, so the exception to immunity for unconstitutional conduct did not apply. Applying these principles, Plaintiff's wrongful death claim as it currently reads is also one against the state. *Id.* Because this deficiency may be cured, Plaintiff has twenty-one days to file a second amended complaint curing these deficiencies.

## III. THE MEDICAL DEFENDANTS' AND WEXFORD'S MOTION TO DISMISS

The Medical Defendants and Wexford argue that Plaintiff fails to state a claim for wrongful death or under the ADA and *Monell* against Wexford. (Doc. 14). They also argue that Plaintiff is improperly attempting to hold Wexford vicariously liable for the conduct of its employees. *Id.* at 5. The Court will address each argument in turn.

### A. Plaintiff Fails to State a Claim Under the ADA and the Rehabilitation Act Against Wexford

Count VII of the amended complaint states a claim under the ADA and the Rehabilitation Act against Wexford. Defendants argue that Plaintiff has failed to state a claim under either Act against Wexford because (1) Wexford is not a public entity subject to suit under Title II of the ADA; (2) Plaintiff has not alleged that Wexford receives federal funds as required for liability under the Rehabilitation Act; and (3) Plaintiff's claims are not based on denial of access to a program or service. (Doc. 14 at 7-10).

To state a claim under Title II of the ADA, a plaintiff must allege that he is a "qualified individual with a disability, that he was denied the benefits of the services, programs, or activities of a public entity, or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was by reason of his disability." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (internal citations omitted). A Rehabilitation Act claim is "functionally identical" to an ADA claim: it requires the plaintiff to allege that (1) he is a qualified person (2) with a disability and (3) the defendant denied him access to a program or activity because of his disability. *Id.*

(citing *Jaros*, 684 F.3d at 672). Although, Rehabilitation Act claims are not restricted to public entities, *Ruffin v. Rockford Memorial Hosp.*, 181 F.App'x 582, 584 n. ** (7th Cir. 2006), and the relevant entity must accept federal funds. *Wagoner*, 778 F.3d at 592.

First, Plaintiff's claim under Title II of the ADA fails because Wexford is not a public entity. Title II defines a "public entity" as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49)." 42 U.S.C. § 12131(1). Wexford is a private corporation.

Plaintiff argues that, because Wexford has contracted to provide medical services for the IDOC, it is an instrumentality of the State of Illinois (through the IDOC). Majority of courts have rejected the argument that a private entity becomes an "instrumentality of the State" merely by contracting with a public entity for the provision of some service. *See Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010) ("[A] private corporation is not a public entity merely because it contracts with a public entity to provide some service."); *Maxwell v. S. Bend Work Release Ctr.*, 787 F.Supp.2d 819, 821 (N.D. Ind. 2011) (privately-owned company that contracted with the Indiana Department of Corrections was not a public entity under Title II); *Hahn v. Linn County*, 191 F.Supp.2d 1051, 1055 n. 2 (N.D. Iowa 2002) ("Title II limits its liability to a public entity and . . . a contractual relationship between a private

corporation and a county government does not transform the private corporation into a 'public entity.'"). Plaintiff's ADA claim against Wexford is therefore dismissed.

Second, Plaintiff fails to state a claim for relief under the Rehabilitation Act against Wexford. Like an ADA claim, key to Rehabilitation Act claims is an exclusion, denial, or differential treatment because of the disability. Plaintiff does not allege that Regan was excluded from programs or activities, denied benefits, or treated differently from other inmates because of his disability. To the contrary, Plaintiff pleads that Regan was "seeing psychiatrists, attending individual and group therapy sessions, along with being prescribed various psychotropic medications" while he was at Pontiac. (Doc. 2 at ¶36). Plaintiff's allegations in her complaint revolve around the Defendants' failure to provide *adequate* mental health care while incarcerated at Pontiac. *Id.* at ¶48. This is insufficient to state a claim under the Rehabilitation Act. *See Miller v. Kozel*, No. 10-5381, 2010 WL 5060267, *5 (N.D. Ill. Dec. 6, 2010) (dismissing with prejudice ADA and Rehabilitation Act claims in a jail suicide case because Plaintiff did not allege that the deceased was denied anything because of his disability); *Cousins v. Ind. Dep't of Corrections*, No. 15-531, 2016 WL 5871647, *4 (N.D. Ind. Oct. 6, 2016) (dismissing Plaintiff's Rehabilitation Act and ADA claims because the "essence of Plaintiffs' factual allegations is that Cousins did not receive proper treatment for his mental illness," and noting that "the ADA and Rehabilitation Act do not create remedies for medical malpractice."). Plaintiff has twenty-one days to file a second amended complaint curing the deficiencies in her Rehabilitation Act claim if she can in good faith do so.

## B. Wexford Cannot be Held Vicariously Liable for the Alleged Constitutional Violations of its Employees

Plaintiff brings a § 1983 claim against Wexford in Count III of her amended complaint. She alleges that the Medical Defendants were acting within the scope of their employment at Wexford and under color of law when they deliberately disregarded the immediate and serious threat to the mental health and well-being of persons at Pontiac in need of mental health treatment. (Doc. 2, ¶¶87-88). Plaintiff further alleges that Wexford should be held liable under § 1983 because the Medical Defendants caused Regan's suicide. *Id.* at ¶92.

Defendants correctly argue that Count III sounds in *respondeat superior* liability. It is well-settled that *respondeat superior* is not a basis for rendering private corporations liable under § 1983 for the constitutional torts of their employees. *Shields v. Ill. Dep't of Corrections*, 746 F.3d 782, 790 (7th Cir. 2014). A private corporation cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Id.* (affirming summary judgment in Wexford's favor because it could not be held vicariously liable for the constitutional violations of its employees). Count III does not allege that Wexford was enforcing an unconstitutional policy or custom. Count VIII, on the other hand, explicitly alleges a *Monell* claim against Wexford. Thus, to the extent Count III of Plaintiff's amended complaint attempts to hold Wexford vicariously liable for the alleged constitutional violations of the Medical Defendants, that claim must be dismissed.

## C. Plaintiff Has Failed to State a Claim Under *Monell* Against Wexford

Count VIII of the amended complaint alleges a *Monell* claim against Wexford. *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978), held that municipalities, like other state actors, are subject to liability under § 1983 when their policies subject, or cause to be subjected, any U.S. citizen to the deprivation of a constitutional right. A private corporation, such as Wexford, that has contracted to provide essential government services is treated the same as municipalities for liability purposes under § 1983. *Glisson v. Ind. Dep't of Corrections*, 849 F.3d 372, 378-39 (7th Cir. 2017); *Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010). Liability attaches to Wexford only if it had an unconstitutional policy or practice that caused Regan's alleged constitutional deprivations. To state a *Monell* claim, a plaintiff must allege that his constitutional violation was "caused by (1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or 3) a decision by a municipal agent with 'final policymaking authority.'" *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011) (citing *Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 629 (7th Cir. 2009)).

In support of her *Monell* claim, Plaintiff alleges that Regan's death was caused by Wexford when it, with deliberate indifference: (a) failed to establish and/or implement policies, practices and procedures to ensure that inmates at Pontiac receive appropriate medical care for serious physical and mental health needs, and if necessary, health care services outside the jail; (b) failed to establish and/or implement policies, practices and procedures to ensure that inmates at Pontiac receive appropriate medical care for serious medical and mental health needs; (c)

failed to adequately assess and provide adequate care and treatment for inmates who are a danger to themselves or others at Pontiac; (d) failed to adequately monitor the deteriorating mental health conditions of inmates; (e) failed to ensure thorough training, supervision and discipline that medical staff at Pontiac, in necessary circumstances, make a referral for health care services outside the jail; (f) failed to ensure thorough training, supervision and discipline that correctional and medical staff adequately communicate and document inmates' deteriorating mental health conditions; (g) failed to ensure thorough training, supervision and discipline that correctional and medical staff properly respond to inmates' deteriorating mental health conditions; (h) failed to contract for medical and mental health services in a manner so that financial incentives would not affect referring inmates for health care services outside the jail; and (i) possessed knowledge of deficiencies in the policies, practices, customs and procedures concerning inmates, and approved and/or deliberately turned a blind eye to these deficiencies. (Doc. 2, ¶136(a)-(i)).

Boilerplate allegations that repeat the elements of a *Monell* claim without any further factual content are dismissed for failure to state a claim. *Dennis v. Curran*, No. 16-6014, 2017 WL 264497, *5 (N.D. Ill. Jan. 20 2017); *Falk v. Perez*, 973 F.Supp.2d 850, 864 (N.D. Ill. 2013). Plaintiff has not provided *facts* to support allegations of a formal policy, or of repeated incidents suggesting a pattern or practice of indifference by Wexford. For example, in *Holman v. Wexford Health Sources, Inc.*, 14-1439-JES-JEH (C.D. Ill. Nov. 13, 2014), it was sufficient that Plaintiff alleged that Wexford had a widespread practice of compromising care to increase profit, and that

an employee-doctor acted pursuant to that practice when he refused to grant hospital staff authority to conduct a procedure on Plaintiff. (Doc. 40). And in *Rendon v. Wexford Health Sources, Inc.*, No. 10-1410, 2011 WL 2669211, *11 (C.D. Ill. July 7, 2011), Plaintiff alleged that Wexford had a custom and practice of failing to process medical requests, failing to train employees, and failing to properly staff jails. To support this allegation, Plaintiff pleaded facts regarding problems that Wexford encountered at other facilities in Illinois, New Mexico, Washington, and Pennsylvania. *Id.* Plaintiff also alleged facts showing that Dwight Correctional Facility, where Plaintiff was housed, was recently evaluated and it was determined that the Facility had significant medical intake problems for mental health patients. *Id.* By contrast, the gist of Hogle's claim is that Wexford staff failed to give proper care to Regan for his mental health needs. As the amended complaint currently reads, Plaintiff has not plausibly alleged a *Monell* claim against Wexford. Because these deficiencies can be cured, Plaintiff has twenty-one days to file a second amended complaint curing the deficiencies.

### D. Plaintiff Has Failed to Properly Plead a Claim Under the Illinois Wrongful Death Act Against Wexford

Count XI of Plaintiff's amended complaint asserts a wrongful death claim against Wexford pursuant to the Illinois Wrongful Death Act ("IWDA"), 740 ILCS 180/1. The IWDA "permits an action for damages whenever the death of a person is caused by a wrongful act or neglect and if the person injured, had they survived, could have brought an action for damages." *Seef v. Sutkus*, 145 Ill.2d 336, 337 (Ill.1991). "[A] plaintiff seeking damages for 'medical, hospital, or other health art malpractice'

must attach to his complaint either (1) an affidavit confirming that he has reviewed the facts of the case with a health care professional and that the professional believes that there is a 'reasonable and meritorious cause for the filing of such action,' as well as a copy of the professional's written report on the case, or (2) an affidavit stating an acceptable reason why such an opinion and report could not be obtained." *Hahn v. Walsh*, 762 F.3d 617, 628 (7th Cir. 2014) (citing 735 ILCS 5/2-622(a)). "The failure to file a certificate required by this Section shall be grounds for dismissal." 735 ILCS 5/2-622(g).

Plaintiff admittedly did not file the required certificate with her complaint, and her claim must therefore be dismissed without prejudice. *Walsh*, 762 F.3d at 633-34. Because this deficiency can be cured, Plaintiff has twenty-one days to file a second amended complaint curing the deficiency.

### Conclusion

In summary:

1) Plaintiff has incorrectly pleaded in Counts I-IV § 1983 claims pursuant to the Fourteenth Amendment against Baldwin, Hinton, Unknown Medical Director of Pontiac, Pierce, Wexford, and Other Unknown Employees of the IDOC. Plaintiff has also incorrectly pleaded in Count VIII *Monell* liability against Wexford pursuant to the Fourteenth Amendment. Those claims are dismissed. Plaintiff is granted twenty-one days to file a second amended complaint curing this deficiency.

2) To the extent Plaintiff asserts § 1983 claims against Baldwin and Pierce in their official capacities, those claims are dismissed with prejudice as barred by the Eleventh Amendment.

3) Plaintiff's ADA and Rehabilitation Act claims as alleged in Count VI against Hinton are dismissed and may not be repleaded.

4) Plaintiff's wrongful death claim as alleged in Count IX against Baldwin is dismissed because this Court lacks jurisdiction over that claim. Plaintiff is granted twenty-one days to file a second amended complaint curing her deficiencies.

5) Plaintiff has failed to state a claim under the ADA and the Rehabilitation Act in Count VII against Wexford. Plaintiff's ADA claim against Wexford is dismissed and may not be repleaded. Plaintiff is granted twenty-one days to file a second amended complaint curing the deficiencies in her Rehabilitation Act claim against Wexford.

6) To the extent that Count III of Plaintiff's amended complaint attempts to hold Wexford vicariously liable under § 1983 for the alleged constitutional torts of its employees, those claims are dismissed and may not be repleaded.

7) Plaintiff has failed to state a claim under *Monell* as alleged in Count VIII against Wexford and that claim is therefore dismissed. Plaintiff is granted twenty-one days to file a second amended complaint curing her deficiencies.

8) Plaintiff has failed to state a wrongful death claim as alleged in Count XI against Wexford and that claim is therefore dismissed. Plaintiff is granted twenty-one days to file a second amended complaint curing her deficiencies.

Thus, the Correctional Defendants' Partial Motion to Dismiss (Doc. 7) and the Medical Defendants' and Wexford's Motion to Dismiss (Doc. 13) are granted. Plaintiff is granted twenty-one days to file a second amended complaint curing her deficiencies as noted.

Entered this 18th day of September, 2017.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge