## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| ESTATE OF PATRICK A. REGAN, by DONNA HOGLE, as Administrator of the Estate, and on behalf of the survivors, Donna Hogle, Robert Regan, Derek M. Regan, Riley Regan, and H. R., a minor, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| Vs. | ) ) | Case No. 17 cv 1059 |
| JOHN BALDWIN, as Director of the Illinois Department of Corrections, WEXFORD HEALTH SOURCES, INC., a foreign corporation, LINDA DUCKWORTH, in her individual capacity, STEPHEN LANTERMAN, in his individual capacity, KELLY HAAG, in her individual capacity, DR. REZWAN KHAN, in his individual capacity, SUSAN PRENTICE, in her individual capacity, TAYLOR COOL, in her individual capacity, and CHRISTIAN BOLTE, in his individual capacity, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## THIRD AMENDED COMPLAINT

NOW COMES the Plaintiff, DONNA HOGLE, as Administrator of the Estate of

PATRICK A. REGAN, and on behalf of the survivors, Donna Hogle, Robert Regan, Derek M.

Regan, Riley Regan, and H. R., a minor, by and through her attorneys, TURNER & SACKETT,

LLC, and MEYER & KISS, LLC, and complaining of the Defendants, JOHN BALDWIN,

Director of the Illinois Department of Corrections, WEXFORD HEALTH SOURCES INC., a

foreign corporation, LINDA DUCKWORTH, in her individual capacity, STEPHEN

LANTERMAN, in his individual capacity, KELLY HAAG, in her individual capacity, DR.

REZWAN KHAN, in his individual capacity, SUSAN PRENTICE, in her individual capacity,

TAYLOR COOL, in her individual capacity, and CHRISTIAN BOLTE, in his individual

capacity, states as follows:

## INTRODUCTION

1. On February 10, 2016, Patrick A. Regan, while an inmate at the Pontiac Correctional Center, fashioned a rope out of his clothing and blanket and threw books out of his cell thereby hanging himself.  By the time medical personnel arrived on the scene, Patrick A. Regan was unresponsive and showed no signs of life.

2. Patrick A. Regan had previously been diagnosed with Post Traumatic Stress Disorder (PTSD), Bipolar Disorder, General Anxiety Disorder, Depression and Borderline Personality Disorder at various times throughout his incarceration, and was on a regimen of psychotropic medications throughout.

3. That having been processed to the Pontiac Correctional Center, the Defendants and each of its employees and agents were aware, or in the exercise of due care should have known of the suicidal tendencies of the Plaintiff's decedent and his prescribed medication for his mental health needs.

4. Upon information and belief, Patrick A. Regan was denied prescribed medication on more than one occasion.

5. Patrick A. Regan continually complained of PTSD and fear for himself in that he would be unable to protect himself, and cause possible harm to his cellmates as a response to his PTSD triggers.

6. As a result of this fear, Patrick A. Regan insisted he remain in a cell by himself.

7. Patrick A. Regan was cognizant of his needs for help and his repeated requests to the guards went unanswered. He was denied the ongoing mental health care he needed, and as a result, took the only way out he knew. He killed himself.

8. On the day of his death, February 10, 2016, Patrick had been in his cell for a period of more than 30 minutes, preparing the ligatures, tying his torn clothes to books, tying himself to the bed, then tossing the books out the cell door between the bars.

9. That at all times relevant hereto the Defendants had a duty to supervise, control, and or take all necessary, appropriate and reasonable precautions to prevent Plaintiff's decedent, from injuring himself while incarcerated.

10. That at said time and place, notwithstanding said duty, the Defendants committed one or more of the following intentional, or reckless and careless, acts:

   a. Failure to monitor Patrick A. Regan;

   b. Failure to supervise Patrick A. Regan knowing his suicidal tendencies;

   c. Failure to place Patrick A. Regan on suicide watch;

   d. Failure to monitor and deliver prescribed medication to Patrick A. Regan;

11. That as a direct and proximate result of one or more of the aforesaid willful and wanton acts and/or omissions by the Defendants, Plaintiff's decedent, Patrick A. Regan, then and there passed away as a result of asphyxiation due to hanging himself.

## JURISDICTION AND VENUE

12. This court has jurisdiction over this matter under the following:

    a. 28 U.S.C. §1331 as this is a civil action arising under the Constitution, laws and/or treaties of the United States; and

    b. 28 U.S.C. §1337, as this is a civil action or proceeding arising under an Act of Congress regulating commerce and/or protecting trade and commerce against restraints and monopolies; and

    c. 28 U.S.C. §1343, as this is a civil action seeking to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom and/or usage, of a right, privilege, or immunity secured by the Constitution of the United States, and/or by an act of Congress proving for equal rights of citizens or of all person within the jurisdiction of the United States.

13. Plaintiff's claim for relief are predicated, in part, upon 42 U.S.C. §1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and laws of the United States, and upon 42 U.S.C. §1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions pursuant to 42 U.S.C. §1983.

14. The Plaintiff's claim for relief is also predicated upon Section 504 of the Rehabilitation Act of 1973, which authorizes actions to redress discrimination based on handicaps and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §12131 and §12133, which authorizes the award of attorney's fees to prevailing plaintiffs.

15. Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. §1367, to consider the state law claims alleged herein.

16. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) and §1391(c), as Defendants do business in this judicial district and the events or omissions giving rise to the claims occurred in this judicial district.

## **PARTIES**

17. Plaintiff, DONNA HOGLE, is the Administrator of the ESTATE OF PATRICK A. REGAN, having been appointed Administrator by the Probate Division of the Circuit Court of the Sixteenth Judicial Circuit, Kane County, in Case Number:  16 P 238. This action is brought by DONNA HOGLE, mother of Patrick A. Regan, in her capacity as Administrator of the ESTATE OF PATRICK A. REGAN, and on behalf of the survivors, Donna Hogle, Robert Regan, Derek M. Regan, Riley Regan, and H. R., a minor.

18. At all times material to this action, Patrick A. Regan, Plaintiff's decedent, was an inmate housed at the Pontiac Correctional Center, in Livingston County, Illinois at the time of his death on February 10, 2016.

19. At all times material to this complaint, Defendant JOHN BALDWIN, (hereinafter "BALDWIN") was the Director of the Illinois Department of Corrections ("IDOC"). Defendant BALDWIN, was responsible for carrying out the policies and procedures in the IDOC and had a non-delegable duty to timely address the mental health care needs of inmates. At all times material to this action, Patrick A. Regan was a prisoner subject to the care, custody and control of Defendant BALDWIN. He is sued in his official capacity.

20. Defendant, BALDWIN, Director of IDOC, is responsible for the establishment and
    implementation of the policies, procedures, practices, and customs, as well as the acts and
    omissions, challenged by this suit.

21. At all times material to this complaint, Defendant WEXFORD HEATH SOURCES, INC.
    (hereinafter "WEXFORD"), a Pennsylvania corporation, doing business in Illinois, had a
    contract with IDOC to provide medical and mental health care to those detained in the IDOC
    system, including, Pontiac Correctional Center, amongst others. Defendant WEXFORD was
    responsible for providing all medical services to detainees, including but not limited to: the
    assessment of need for services; provision of care and treatment services for all health care
    needs and follow up; and for hiring, training, supervision and conduct of all health care
    providers at Pontiac Correctional Center.  At all relevant times, WEXFORD, by and through
    its employees and agents, were acting under color of law and its agents and employees were
    acting in the course and scope of their employment.

22. Defendant WEXFORD was responsible for the establishment and implementation of the
    policies, procedures, practices, and customs, as well as the acts and omissions, challenged by
    this suit.

23. At all times material to this complaint, Defendant, LINDA DUCKWORTH, (hereinafter
    "DUCKWORTH"), was a registered professional nurse and/or licensed clinical social
    worker, who was responsible for patient mental health care at Pontiac Correctional Center.
    Defendant, DUCKWORTH, was responsible for carrying out the policies and procedures for
    mental health care then in effect at Pontiac Correctional Center, and for the timely response
    to the mental health care needs of inmates occurring, and coming to her attention. At all

times material to this action, Patrick A. Regan was an inmate subject to the care and treatment of Defendant, DUCKWORTH. Defendant, DUCKWORTH is an employee of Defendant WEXFORD.

24. At all times material to this complaint, Defendant, STEPHEN LANTERMAN, (hereinafter "LANTERMAN"), was a clinical social worker who was responsible for patient mental health care at Pontiac Correctional Center. Defendant, LANTERMAN, was responsible for carrying out the policies and procedures for mental health care then in effect at Pontiac Correctional Center, and for the timely response to the mental health care needs of inmates occurring, and coming to his attention. At all times material to this action, Patrick A. Regan was an inmate subject to the care and treatment of Defendant, LANTERMAN. Defendant, LANTERMAN is an employee of Defendant WEXFORD.

25. At all times material to this complaint, Defendant, KELLY HAAG, (hereinafter "HAAG"), was a clinical social worker who was responsible for patient mental health care at Pontiac Correctional Center. Defendant, HAAG, was responsible for carrying out the policies and procedures for mental health care then in effect at Pontiac Correctional Center, and for the timely response to the mental health care needs of inmates occurring, and coming to her attention. At all times material to this action, Patrick A. Regan was an inmate subject to the care and treatment of Defendant, HAAG. Defendant, HAAG, is an employee of Defendant WEXFORD.

26. At all times material to this complaint, Defendant, DR. REZWAN KHAN, (hereinafter "KHAN"), was a clinical psychiatrist who was responsible for patient mental health care at Pontiac Correctional Center. Defendant, KHAN, was responsible for carrying out the policies

and procedures for mental health care then in effect at Pontiac Correctional Center, and for the timely response to the mental health care needs of inmates occurring, and coming to his attention. At all times material to this action Patrick A. Regan was a prisoner subject to the care and treatment of Defendant, KHAN. Defendant, KHAN, is an employee of Defendant WEXFORD.

27. At all times material to this complaint, Defendant SUSAN PRENTICE (hereinafter "PRENTICE"), was employed as a Correctional Major by the Illinois Department of Corrections, and was responsible for the well-being and safety of prisoners at Pontiac Correctional Center.  At all times material to this action, Patrick A. Regan was an inmate subject to the care, custody and control of Defendant PRENTICE while he was housed in the segregation unit.

28. At all times material to this complaint, Defendant TAYLOR COOL (hereinafter "COOL"), was employed as a Correctional Officer by the Illinois Department of Corrections, and was responsible for the well-being and safety of prisoners at Pontiac Correctional Center.  At all times material to this action, Patrick A. Regan was an inmate subject to the care, custody and control of Defendant COOL while he was housed in the segregation unit.

29. At all times material to this complaint, Defendant CHRISTIAN BOLTE (hereinafter "BOLTE"), was employed as a Correctional Officer by the Illinois Department of Corrections, and was responsible for the well-being and safety of prisoners at Pontiac Correctional Center.  At all times material to this action, Patrick A. Regan was an inmate subject to the care, custody and control of Defendant BOLTE while he was housed in the segregation unit.

30. Collectively, the individual Defendants BALDWIN, PRENTICE, COOL, and BOLTE are referred to as "IDOC Defendants".

## COMMON ALLEGATIONS OF FACTS

31. While in custody at DeKalb County Jail, Plaintiff's decedent, Patrick A. Regan, attempted suicide, by hanging, in September 21, 2014.  He was 24 years old.

32. On October 20, 2014, Patrick A. Regan, was sentenced in DeKalb County Court, Case No. 13 CF 580, to three years in the Illinois Department of Corrections.

33. On October 21, 2014, Patrick A. Regan was transferred from DeKalb County Jail to Vienna Correctional Center.

34. Patrick A. Regan was transferred from Vienna Correctional Center to Pinckneyville Correctional Center on December 1, 2014.

35. Patrick A. Regan was transferred from Pinckneyville Correctional Center to Pontiac Correctional Center on July 1, 2015.

36. While housed in Vienna Correctional Center, Pinckneyville Correctional Center, and Pontiac Correctional Center, Patrick A. Regan was seeing psychiatrists, attending individual and group therapy sessions, along with being prescribed various psychotropic medications.

37. Patrick A. Regan, while an inmate at the Pontiac Correctional Center, spent more than 30 minutes fashioning a rope out of his blanket and his clothing and hung himself on February 10, 2016.

38. Upon information and belief, prior to February 10, 2016, the day Patrick A. Regan took his life, he had not been seen by medical staff in eleven days.

39. Patrick A. Regan was taken off of crisis watch on January 25, 2016, and did not see the psychiatrist, Defendant, KHAN, until January 30, 2016.  At that time he was prescribed new psychotropic medications and had no follow-up sessions through the date he took his own life.

40. Upon information and belief, between January 23, 2016, and January 30, 2016, Patrick A. Regan had met with four medical health care professionals:  HAAG, DUCKWORTH, LANTERMAN and KHAN.  These individuals are hereafter collectively referred to as "WEXFORD Defendants."

41. On January 23, 2016, Patrick A. Regan met with Defendant, HAAG, at which time a mental health progress note was completed. It was determined on this date by HAAG, that Patrick A. Regan remain on a ten minute watch, and his property be limited due to potential for self-harm.

42. On January 24, 2016, Patrick A. Regan met with Defendant, DUCKWORTH, at which time a mental health progress note was completed. It was determined on this date by DUCKWORTH that the ten minute checks on Patrick A. Regan be discontinued and he be placed on fifteen minute checks.

43. On January 25, 2016, Patrick A. Regan met with Defendant, LANTERMAN, and a mental health progress note was completed at this time. It was determined on this date by LANTERMAN that Patrick A. Regan be taken off crisis watch, with a seven day mental health professional follow-up, along with a medical doctor follow up.

44. Upon information and belief, on February 10, 2016, on the same day Patrick A. Regan committed suicide, while leaving the yard, at the entrance to the building, Regan asked

Defendant PRENTICE to speak with a crisis member, to which Defendant PRENTICE denied his request.

45. Upon information and belief, on February 10, 2016, on the same day Patrick A. Regan committed suicide, after returning from the yard, while in his cell, he asked Defendant PRENTICE to speak with a crisis member, to which Defendant PRENTICE denied his request.

46. A review of the camera system from the unit on February 10, 2016, and as substantiated in IDOC Investigator Leslie Turner's (#487) Report of Investigation, showed that Defendants COOL and BOLTE walked past Patrick A. Regan's cell at 3:32 PM, while collecting trash, and took an item from Regan's cell, at which time Regan was standing at the door with material tied to bars and in his hands.

47. A review of the camera system from the unit on February 10, 2016, and as substantiated in IDOC Investigator Leslie Turner's (#487) Report of Investigation, showed that Defendants COOL and BOLTE again walked past Patrick A. Regan's cell at 3:34 PM, at which time Regan was at the cell door with material tied to and hanging from bars nearly to the floor.

48. A review of the camera system from the unit on February 10, 2016, and as substantiated in IDOC Investigator Leslie Turner's (#487) Report of Investigation, showed that Defendant COOL again walked past Patrick A. Regan's cell at 3:42 PM, and turned her head toward the cell, at which time Regan was standing on his property box with material hanging nearly to the floor.

49. A review of the camera system from the unit on February 10, 2016, and as substantiated in IDOC Investigator Leslie Turner's (#487) Report of Investigation, showed that Defendant

COOL again walked past Patrick A. Regan's cell at 3:44 PM, while escorting an inmate, at which time Regan was standing on his property box with material hanging.

50. A review of the camera system from the unit on February 10, 2016, and as substantiated in IDOC Investigator Leslie Turner's (#487) Report of Investigation, showed that Defendant COOL again walked past Patrick A. Regan's cell at 3:49 PM, while escorting another inmate, and turned her head toward the cell, at which time Regan was standing on his property box with material hanging.

51. A review of the camera system from the unit on February 10, 2016, and as substantiated in IDOC Investigator Leslie Turner's (#487) Report of Investigation, showed that Defendant COOL again walked past Patrick A. Regan's cell at 3:52 PM, at which time Regan was standing at the door with material hanging.

52. A review of the camera system from the unit on February 10, 2016, and as substantiated in IDOC Investigator Leslie Turner's (#487) Report of Investigation, shows no further movement in Patrick A. Regan's cell as of 3:56 PM, presumably the time he hanged himself.

53. A review of the camera system from the unit on February 10, 2016, and as substantiated in IDOC Investigator Leslie Turner's (#487) Report of Investigation, shows that Defendant COOL walked past Patrick A. Regan's cell at 4:12 PM and discovers he has hanged himself.

54. Defendant COOL's actions or inactions on February 10, 2016, violated IDOC Administrative Directive 03.02.108 Standards of Conduct in that she failed to conduct herself in a professional manner and not engage in conduct that is unbecoming of a State employee or that may reflect unfavorably on or impair operations of the Department.

55. Defendant COOL failed to adhere to the requirements of her post description as Segregation Gallery Release Officer in that during her inspections of cells on February 10, 2016, she was not attentive to Patrick A. Regan's behavior and/or actions and failed to immediately report any unusual incidents and/or concerns to her supervisors.

56. WEXFORD Defendants knew at the time they saw Patrick A. Regan that he had serious medical and mental health care needs.

57. WEXFORD Defendants knew at the time they saw Patrick A. Regan that if they did not provide effective and appropriate care, Patrick A. Regan's physical and mental health would deteriorate.

58. All Defendants knew that Patrick A. Regan, as an inmate at Pontiac Correctional Center, had no other treatment options, and if they (WEXFORD and IDOC Defendants) failed to provide adequate treatment, he could not access any other treatment.

59. At all times material hereto, Defendant, BALDWIN and IDOC employees and agents acting on his behalf, acted within the scope of their employment and under color of state law.

60. At all times material hereto, Defendant, BALDWIN conducted regular audits and received reports on conditions at IDOC, including Pontiac Correctional Center. Therefore, Defendant, BALDWIN was well aware that inmates, including Patrick A. Regan, were not receiving minimally adequate mental health care while incarcerated in the IDOC.

61. Defendant, BALDWIN was aware there was not a sufficient mental health staff at Pontiac Correctional Center to address the mental health needs of inmates suffering from severe symptoms and self-destructive behavior.

62. Defendant, BALDWIN had heavily participated in budget plans that left mental health needs unmet for inmates like Patrick A. Regan.

63. Defendant, BALDWIN was aware that correctional staff was untrained and prone to ignore mental health problems, frequently causing harm to inmates in their care.

64. At all times material, Defendant BALDWIN knew that the training given to the correctional staff did not sufficiently provide the staff necessary information regarding the right of inmates, such as Patrick A. Regan, to be kept safe and provided with proper medical care.

65. The staff's training was inadequate and insufficient to properly provide appropriate guidelines and job standards for proper performance of their job in a manner sufficient to meet the needs of Patrick A. Regan.

66. As a direct and proximate result of Defendants' acts and omissions, Patrick A. Regan was found hanging in his prison cell at Pontiac Correctional Center on February 10, 2016.

67. Pursuant to Ill. Admin. Code tit. 20, § 107.20 a record of the offender's time and his or her behavior and conduct while in the custody of the IDOC must be formulated. Any action on the part of the offender that might affect his or her security status with the Department, including, but not limited to, an escape attempt, participation in a riot, or a suicide attempt, should be included in the record. All of this information should have been received and taken into account when Patrick A. Regan was transferred to Pontiac Correctional Center from Pinckneyville Correctional Center.

68. Defendants willfully and wantonly disregarded the relevant information relayed to them pursuant to the aforementioned statute.

69. As a proximate cause of the Defendants' negligence, Patrick A. Regan did not receive the care necessary to prevent his suicide.

70. Plaintiff, DONNA HOGLE, has had to retain counsel and is entitled to reimbursement of a reasonable attorneys fee, pursuant to 42 USC §1988.

### Causes of Action:

### COUNT I: Claims under 42 U.S.C. 1983: Defendants KHAN, DUCKWORTH, LANTERMAN and HAAG

71. Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

72.  Plaintiff is entitled to relief against Defendants KHAN, DUCKWORTH, LANTERMAN and HAAG under 42 U.S.C. § 1983, based on violation of the Eighth Amendment to the U.S. Constitution.

73. At all times material, Plaintiff's decedent, Patrick A. Regan, had a constitutionally protected right under the Eighth Amendment to the U.S. Constitution to receive needed care while in the IDOC, and to have his mental health issues timely and properly assessed and treated.

74. Prior to his death, Patrick A. Regan was an inmate at Pontiac Correctional Center in Pontiac, Illinois.

75. Defendants KHAN, DUCKWORTH, LANTERMAN and HAAG were at all relevant times medical personnel who worked at Pontiac Correctional Center, employed by the Defendant, WEXFORD, and acting within the scope of their employment and under color of law.

76. Defendants KHAN, DUCKWORTH, LANTERMAN and HAAG, deliberately disregarded the immediate and serious threat to the mental health and well-being of persons in Pontiac

15

Correctional Center in need of mental health treatment, exhibited deliberate and callous indifference to serious psychological and mental health needs, by denying access to intensive and structured mental health care, treatment, and observation.

77.  Defendants KHAN, DUCKWORTH, LANTERMAN and HAAG, as alleged herein, were well aware that Patrick A. Regan suffered from severe mental health needs and was at risk of suicide. Despite this knowledge, Defendants KHAN, DUCKWORTH, LANTERMAN and HAAG alleged herein, intentionally and knowingly failed to provide serious, ongoing case management and treatment to Patrick A. Regan.

78. Defendants KHAN, DUCKWORTH, LANTERMAN and HAAG alleged herein, knew at all times material to this action that there was a substantial risk that Patrick A. Regan, a mentally ill inmate, left substantially untreated, would attempt suicide, that such suicide was reasonably foreseeable, that the threat of this action was imminent and immediate, and that Patrick A. Regan was provided the means to accomplish this end.

79.  Defendants KHAN, DUCKWORTH, LANTERMAN and HAAG alleged herein, deliberately disregarded the immediate and serious threat to Patrick A. Regan's mental health and well-being and exhibited conscious disregard and utter indifference to his serious medical and psychological needs by denying and unreasonably delaying access to competent mental health care to treat his serious mental illness.

80.  It is more likely than not that the failure of the Defendants KHAN, DUCKWORTH, LANTERMAN and HAAG as alleged above was the cause of Patrick A. Regan's suicide.

WHEREFORE, the Plaintiff, DONNA HOGLE, as Administrator of the ESTATE OF PATRICK A. REGAN, deceased, and on behalf of the Survivors, Donna Hogle, Robert Regan,

16

Derek M. Regan, Riley Regan, and H. R., a minor, pray for judgment against Defendants
KHAN, DUCKWORTH, LANTERMAN and HAAG for fair and reasonable compensatory
damages, reasonable punitive damages, plus attorneys' fees pursuant to 42 U.S.C. § 1988 and
costs of litigation and for such and further relief as this court deems just.

## COUNT II: ADA and Rehabilitation Act: BALDWIN

81. Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

82. This Count is a claim for disability discrimination against Defendant BALDWIN for
violating Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.,
(hereinafter "ADA") which provides in pertinent part at 42 U.S.C. § 12132: No qualified
individual with a disability shall, by reason of such disability, be excluded from participation
in or be denied the benefits of the services, programs, or activities of a public entity, or be
subjected to discrimination by such entity.

83.  Title II of the Act prohibits, among other things: limiting a qualified individual's enjoyment
of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit,
or service of an agency; and subjecting a qualified individual to discrimination under any
program or activity conducted by an agency 28 C.F.R. § 39.130.

84.  Patrick A. Regan was disabled as defined at 42 U.S.C. § 12102(2) and a "qualified
individual" as defined at 42 U.S.C. § 12131(2), in that he suffered from Post-Traumatic
Stress Disorder, Bipolar Disorder, General Anxiety Disorder, Depression and Borderline
Personality Disorder.

85. Defendant BALDWIN is a public entity in charge of IDOC that has violated Title II of the ADA.

86. Defendant BALDWIN owed Patrick A. Regan non-delegable duty to ensure that his well-being and safety would not be compromised as a result discrimination based on his disability. Accordingly, Defendant BALDWIN is vicariously liable for the actions of any and all persons or entities Defendant BALDWIN designated to care for Patrick A. Regan.

87. Defendant BALDWIN's agents and employees were authorized to act for Defendant BALDWIN when they committed the ADA violations alleged herein. Defendant BALDWIN's agents and employees accepted the undertaking of acting on behalf of Defendant BALDWIN when they committed the ADA violations alleged herein. Defendant BALDWIN had control over his agents and employees when they committed the ADA violations alleged herein.

88. The ADA violations alleged herein and committed by Defendant BALDWIN, and the persons and entities charged with caring for Patrick A. Regan, were done while acting within the course and scope of their employment and/or agency with Defendant BALDWIN.

89. Patrick A. Regan's need for reasonable accommodations was obvious.

90. Defendant BALDWIN, and the persons and entities charged with caring for Patrick A. Regan, knew and/or should have known of Patrick A. Regan's need for reasonable accommodations.

91. Defendant BALDWIN, and the persons and entities charged with caring for Patrick A. Regan, acted intentionally and/or with deliberate indifference to Patrick A. Regan's need for reasonable accommodations as follows:

a.  Inmates in IDOC were entitled to a safe environment, free of known hazards, with adequate sanitation, and removal of traps and obstructions. Persons with disabilities such as those suffered by Patrick A. Regan were exposed to a range of hazards, like bedding, clothing and fixtures that could support a means of hanging that endangered life and safety.

b.  Inmates in IDOC were entitled to receive care and treatment that was responsive to their particular health need, including testing, diagnosis, surgery, therapy, and monitoring. Persons who suffered disabilities such as those suffered by Patrick A. Regan received only medication designed to keep them restrained and quiet.

c.  Inmates in IDOC were entitled to receive security monitoring to protect them from themselves. Persons who suffered disabilities such as those suffered by Patrick A. Regan were known to be a danger to themselves received infrequent security monitoring and inadequate protection.

92. As a direct and proximate result of the refusal and failure of Defendant BALDWIN and his agents and employees charged with caring for Patrick A. Regan, to provide him with accommodations for his disability, the satisfaction of common needs necessary to a decent life, he suffered the agony of isolation, loneliness, and despair and was thus driven to suicide.

WHEREFORE, the Plaintiff, DONNA HOGLE, as Administrator of the ESTATE OF PATRICK A. REGAN, deceased, and on behalf of the Survivors, Donna Hogle, Robert Regan, Derek M. Regan, Riley Regan, and H. R., a minor, pray for judgment against Defendant BALDWIN for fair and reasonable compensatory damages, reasonable punitive damages,

damages and fees pursuant to the ADA and Rehabilitation Act, plus attorneys' fees pursuant to

42 U.S.C. § 1988 and costs of litigation and for such and further relief as this court deems just.

## COUNT III: Monell Claim: WEXFORD

93. Plaintiff re-alleges the Common Allegations of Fact as if fully set herein.

94. The violations of Patrick A. Regan's constitutional rights under the Eighth Amendment to the
United States Constitution, his damages and the conduct of the individual defendants, were
directly and proximately caused by the actions and/or inactions of WEXFORD.

95. In federal courts in Illinois, WEXFORD has been the subject of over 1000 lawsuits. Several
hundred of those cases have been filed in the Central District.  See Group Ex. 1, ECF
searched from Central District.

96. In February 2016, and for a period of time prior thereto, Defendant WEXFORD had notice of
a widespread practice by its employees at Pontiac Correctional Center under which detainees
with serious mental health issues, such as Patrick A. Regan, were routinely denied access to
proper or sufficient mental health care.

97. On May 22, 2017, the First Annual Report of Monitor Pablo Stewart, M.D. was completed
that reviewed compliance with a settlement agreement regarding mental health care in
Illinois Department of Corrections facilities, including Pontiac. The report was based on
visits to correctional facility in 2016, just months after Patrick A. Regan's suicide. See Group
Ex. 2.

98. One of the finding of the report was that medical records and medications were not always
properly transferred between institutions. See Group Ex. 2, p. 5.

99. It also was disclosed that suicide prevention measures were not in compliance. See Group Ex. 2, pps. 6, 14.

100. The report also found that there were significant problems with the Crisis Intervention Team and the treatment provided to suicidal offenders on Crisis Watch. See Group Ex. 2, pps. 11, 24-26.

101. The monitors found that "A review of the designated inpatient offenders at Pontiac and Logan revealed that these offenders are extremely ill and require immediate placement in a psychiatric hospital. This review also demonstrated that IDOC is inconsistently providing the enriched services noted above. A significant problem noted with this cohort of offenders is that the majority of them present with multiple acute psychiatric symptoms. The presence of these symptoms is a *direct reflection of the poor psychiatric care* they are receiving." See Group Ex. 2, p. 29 (emphasis added).

102. In November 2016, at Pontiac, "the Monitor encountered inmates in crisis for prolonged periods that had no treatment plans. The Monitor also encountered an inmate who had been on crisis for ten days with an outdated treatment plan. Also, another inmate in crisis for a lengthy period had no treatment plan. These types of problems (i.e., prolonged crisis placement without updated treatment planning) were noted at all the facilities monitored." See Group Ex. 2, p. 30.

103. At Pontiac, the Monitor found that, in some cases, offenders were not even seen every 60 to 90 days by mental health professionals. See Group Ex. 2, p. 32.

104. The Monitor found that "Offenders universally complained about the lack of counseling while being in segregation. This was confirmed by the monitoring team's review of medical

records of offenders housed in segregation. The usual frequency of counseling visits by an MHP was monthly if at all. *This issue was especially problematic at Pontiac.* This lack of supportive counseling is one of the reasons there is such a demand placed on the Crisis Intervention Team. The offenders report that the only way to speak with any mental health staff is by asking to see the Crisis Intervention Team." See Group Ex. 2, pps. 59-60.

105.    At Pontiac, the monitoring team found that, while the suicide risk evaluation was being conducted within seven days of discharge from crisis care, the monthly evaluations were not occurring. See Group Ex. 2, p. 34.

106.    It was discovered that at the time of the report, May 22, 2017, Pontiac was understaffed 1.15 psychologist, 2.5 behavioral health technicians, 1.5 registered nurses, and 2.9 psychiatrists. See Group Ex. 2, p. 36. This understaffing was known to Defendant WEXFORD, but they condoned the understaffing despite promises to State and local government to maintain minimum staffing levels. This understaffing results in the deprivation of medical care at various institutions, including Pontiac, because prison medial facilities lack adequate resources to appropriately deal with all medical problems, including mental health issues.

107.    It was discovered "[D]uring the Monitor's initial visit to Pontiac on August 26, 2016, the Monitor inspected the crisis cells located in the North House. The Monitor found this unit to be the most chaotic *and anti-therapeutic prison unit the Monitor has ever toured in 30 years of working in correctional psychiatry.* The Monitor immediately shared these serious concerns about housing mentally ill offenders requiring a crisis level of care on the North House to the Chiefs of Mental Health and Legal, both verbally and in writing. To the

Monitor's dismay, this situation was unchanged on the Monitor's follow up visit of
November 21, 2016. The Monitor personally interviewed several of the mentally ill offenders
housed at that time in crisis cells on the North House. Their collective responses confirmed
the Monitor's clinical hunch that due to the extremely chaotic nature of the North House,
potentially suicidal offenders would feign being non-suicidal just to get off the North
House." See Group Ex. 2, p. 42.

108.    "During a November 2016 Pontiac visit, the Monitor reviewed the case of an inmate who
was in crisis care since August 29, 2016. A psychiatrist had not seen him while he was in
crisis care. A psychiatrist saw him August 14, 2016 and the inmate received a diagnosis of
unspecified depressive disorder, for which he was being treated with an antidepressant. The
note stated the inmate would be followed up by psychiatry in three months, though this had
not occurred by the time of monitoring visit. Of note, the inmate's medication order had
expired a week before the visit, but he continued to receive the anti-depressant medication.
During the same visit, the Monitor also encountered an inmate in crisis care who was
overwhelmingly psychotic, i.e., responding to internal stimuli and being internally
preoccupied. Six days prior to placement on crisis, a psychiatrist diagnosed the inmate with
adjustment disorder with depressed mood, and the inmate was being treated with an
antidepressant. The Monitor found no evidence in the inmate's chart that the psychiatrist was
aware of the patient's psychotic symptoms.

109.    The Monitor's found the mental health treatment was lacking in the following areas:

a. Severe understaffing of psychiatrists and MHPs

b. Inconsistent follow-up with psychiatrists and MHPs

c. Poor recognition and follow-up of serious psychiatric symptoms

d. Inadequate gathering of outside records to aid with diagnosis and treatment planning

e. Lack of meaningful treatment plans

See Group Ex. 2, p. 78.

110.    Defendant WEXFORD is responsible for providing the mental health care and training the Crisis Intervention Teams.

111.    As indicated in the Monitor's Report, in 2016, there existed a widespread practice by Defendant WEXFORD at Pontiac Correctional Center under which its employees, including medical personnel, commonly fail or refuse to:

a. Properly examine a detainee suffering from a serious mental health issue

b. Provide proper medication to a detainee with a serious mental health issue

c. Properly chart detainee's mental health records

d. Provide proper therapeutic services/accommodations to detainees with mental health issues

112.    This widespread practice is allowed to flourish because Defendant WEXFORD, directly encourages and is thereby the moving force behind, the very type of misconduct at issue by failing to adequately train, supervise, staff, and control mental health personnel.

113.    Pursuant to its contractual relationship with IDOC, Defendant WEXFORD had a constitutional obligation to maintain and provide adequate and appropriate mental health care for incarcerated patients at Pontiac Correctional Center.

114.    The above-described widespread practice, so well-settled and documented by the Monitor's report as to constitute de facto policy in Pontiac Correctional Center and among

WEXFORD employees, were able to exist and thrive because governmental policymakers with authority over the same, namely, Defendant WEXFORD, respectively, exhibited deliberate indifference to the problem, thereby effectively ratifying it.

115.   Plaintiff's injuries were caused by employees of Defendant WEXFORD, including but not limited to the individually named Defendants, who acted pursuant to Defendant WEXFORD's policies and practices in engaging in the misconduct described in this Count.

WHEREFORE, pursuant to <u>Monell v. N.Y. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1987), the Plaintiff, DONNA HOGLE, as Administrator of the ESTATE OF PATRICK A. REGAN, deceased, and on behalf of the Survivors, Donna Hogle, Robert Regan, Derek M. Regan, Riley Regan, and H. R., a minor, pray for judgment against the Defendants, WEXFORD, for fair and reasonable compensatory damages, reasonable punitive damages, plus attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of litigation and for such and further relief as this court deems just.

**COUNT IV: State Claim for Wrongful Death:  WEXFORD**

116.   Plaintiff re-alleges the Common Allegations of Fact as if fully set forth here.

117.   Patrick A. Regan was and is survived by his mother Donna Hogle, his father, Robert Regan, and siblings Derek M. Regan, Riley Regan and H. R., a minor, whom constitute his heirs under Illinois law.

118.   Plaintiff's decedent Patrick A. Regan was officially pronounced dead on February 10, 2016. The wrongful death of Patrick A. Regan was proximately caused by the neglect,

default and/or willful and wanton conduct of the Defendants, as described above in violation of 740 ILCS §180/1.

119. Defendant WEXFORD, through the wrongful conduct of employees KHAN, DUCKWORTH and LANTERMAN (hereinafter referred to as "Defendant WEXFORD's employees"), was the direct and proximate cause of injury and damage to Patrick A. Regan and his estate.

120. Defendant WEXFORD's employees had a duty not to negligently disregard Patrick A. Regan's serious medical needs.  Defendant WEXFORD's employees had a duty not to exhibit utter indifference and conscious disregard to Patrick A. Regan's serious medical needs.

121. Defendant WEXFORD's employees breached these duties by withholding or failing to provide needed medical care for Patrick A. Regan.

122. The conduct of Defendant WEXFORD's employees was undertaken either negligently, or intentionally or recklessly with the intent to cause harm or with substantial certainty that harm would result.

123. Defendant WEXFORD's breaches of duty by its employees were a proximate cause of Patrick A. Regan's death.

124. Not regarding its duty as aforesaid, Defendant WEXFORD, were guilty of one or more negligent, willful and reckless acts or omissions:

a. Failed to promptly and properly provide Patrick A. Regan with medical attention for his immediate medical care needs.

b. Ignored the serious nature of Patrick A. Regan's illness and complaints and need for

immediate medical care.

c. Allowed of Patrick A. Regan to remain in a desperately ill state for an excessive period

of time when he needed immediate medical care.

125.    As next of kin, the heirs of Patrick A. Regan: Donna Hogle, Robert Regan, Derek M.

Regan, Riley Regan and H. R., a minor, have lost and will continue to lose pecuniary

support, consortium, society, companionship as well as the love and affection of their

cherished son and brother, and have incurred funeral and burial expenses as a proximate

cause of his death.

WHEREFORE, the Plaintiff, DONNA HOGLE, as Administrator of the ESTATE OF

PATRICK A. REGAN, deceased, and on behalf of the Survivors, Donna Hogle, Robert Regan,

Derek M. Regan, Riley Regan, and H. R., a minor, pray for judgment against the Defendant,

WEXFORD, for fair and reasonable compensatory damages, reasonable punitive damages, plus

attorneys' fees and costs and for such and further relief as this court deems just.


**COUNT V: Claims under 42 U.S.C. 1983: Defendants PRENTICE, COOL, and BOLTE**

126.    Plaintiff re-alleges the Common Allegations of Fact as if fully set forth here.

127.    Plaintiff is entitled to relief against Defendants PRENTICE, COOL, and BOLTE under

42 U.S.C. § 1983, based on violation of the Eighth Amendment to the U.S. Constitution.

128.    At all times material, Plaintiff's decedent, Patrick A. Regan, had a constitutionally

protected right under the Eighth Amendment to the U.S. Constitution to receive needed care

while in the IDOC, and to have his mental health issues timely and properly assessed and treated, and be provided with adequate supervision.

129.    Prior to his death, Patrick A. Regan was an inmate at Pontiac Correctional Center in Pontiac, Illinois.

130.    Defendants PRENTICE, COOL, and BOLTE were at all relevant times correctional officers employed by IDOC who worked at Pontiac Correctional Center, and acting within the scope of their employment and under color of law.

131.    Defendants PRENTICE, COOL, and BOLTE deliberately disregarded the immediate and serious threat to the mental health and well-being of persons in Pontiac Correctional Center in need of mental health treatment, exhibited deliberate and callous indifference to serious psychological and mental health needs, by denying access to intensive and structured mental health care, treatment, and observation.

132.    Defendants PRENTICE, COOL, and BOLTE were well aware that Patrick A. Regan suffered from severe mental health needs and was at risk of suicide.  Despite this knowledge, Defendants PRENTICE, COOL, and BOLTE intentionally and knowingly failed to provide ongoing supervision and treatment to Patrick A. Regan.

133.    Defendants PRENTICE, COOL, and BOLTE knew or should have known at all times material to this action that there was a substantial risk that Patrick A. Regan, a mentally ill inmate, left substantially untreated and unwatched, would attempt suicide, that such suicide was reasonably foreseeable, that the threat of this action was imminent and immediate, and that Patrick A. Regan was provided the means to accomplish this end.

134.   Defendants PRENTICE, COOL, and BOLTE deliberately disregarded the immediate and serious threat to Patrick A. Regan's mental health and well-being and exhibited deliberate indifference and callous indifference to his serious medical and psychological needs by denying and unreasonably delaying access to competent mental health care to treat his serious mental illness.

135.   Because Defendants PRENTICE, COOL, and BOLTE were not only aware of Plaintiff's decedent's medical needs, but also the necessary treatment and supervision, and medical accommodations that could relieve his suffering, yet Defendants refused to administer them to the Plaintiff's decedent, the Defendants exhibited deliberate indifference to the medical needs of the Plaintiff's decedent.  Hence, Defendants PRENTICE, COOL, and BOLTE violated the rights guaranteed to the Plaintiff's decedent under the Eighth Amendment to the U.S. Constitution.

136.   It is more likely than not that the failure of the Defendants PRENTICE, COOL, and BOLTE as alleged above was the cause of Patrick A. Regan's suicide.

WHEREFORE, the Plaintiff, DONNA HOGLE, as Administrator of the ESTATE OF PATRICK A. REGAN, deceased, and on behalf of the Survivors, Donna Hogle, Robert Regan, Derek M. Regan, Riley Regan, and H. R., a minor, pray for judgment against the Defendants PRENTICE, COOL, and BOLTE for fair and reasonable compensatory damages, reasonable punitive damages, plus attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of litigation and for such and further relief as this court deems just.

**PLAINTIFF REQUESTS A TRIAL BY JURY**

TURNER & SACKETT LLC,

BY:   /S/ Margie Komes Putzler
              One of Plaintiff's Attorneys

Richard L. Turner, Jr. ARDC#:06180425
rturner@turnersackett.com
Margie Komes Putzler ARDC# 6319304
mkomes@turnersackett.com
TURNER & SACKETT LLC
Attorney for Plaintiff
107 West Exchange St.
Sycamore, IL 60178
(815) 895-2131

Louis J. Meyer
louismeyer@meyerkiss.com
Daniel P. Kiss
dankiss@meyerkiss.com
MEYER & KISS, LLC
311 W. Stratford Drive
Peoria, IL 61614
t. 309.713.3751
f. 312.585.7803